# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 17, 2014

## EUGENE MARK HOGBIN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Cheatham County**
**No. 15924      Robert E. Burch, Judge**

**No. M2014-00085-CCA-R3-PC - Filed July 30, 2014**

Petitioner, Eugene Mark Hogbin, was convicted of two counts of aggravated sexual battery and sentenced to an effective sentence of twenty years. Petitioner filed the instant petition for post-conviction relief, in which he alleged that he received ineffective assistance of counsel. Following an evidentiary hearing, the post-conviction court denied relief. On appeal, petitioner argues that he received ineffective assistance of counsel when trial counsel told petitioner that she would win his case at trial. After our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Crystal Morgan, Ashland City, Tennessee, for the appellant, Eugene Mark Hogbin.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Dan Mitchum Alsobrooks, District Attorney General; and Robert S. Wilson, Deputy District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

The evidence at petitioner's trial established that petitioner sexually abused the victim, his ten-year-old step-daughter, from August 2009 until October 2009. *State v. Eugene M. Hogbin*, No. M2012-00945-CCA-R3-CD, 2013 WL 1197728, at \*1-4 (Tenn. Crim. App. Mar. 26, 2013), *no perm app. filed*. After petitioner was arrested,

[petitioner] provided a written statement, which indicated that the victim does inappropriate things to him and that earlier that same evening, she had scratched him on his penis "by accident with her nails" and that she "pulls [his] pants a lot and hits" his penis. Upon further questioning by the deputy, [petitioner] admitted that he enters the bathtub with the victim in order to assist her in washing her hair. [Petitioner] also stated that the victim had once "pulled his pants down while he was making dinner and slapped his penis around." [Petitioner] then described an incident to the deputy wherein the victim had sat down next to him on the sofa, pulled down his pants, and "began jacking him off" until he ejaculated. [Petitioner] indicated that these incidents had occurred over the past three months while his wife was at work.

*Id.* at *1. A jury subsequently convicted petitioner of two counts of aggravated sexual battery, and the trial court sentenced petitioner to ten years for each count, to be served consecutively, for an effective sentence of twenty years. *Id.* at *4. This court affirmed petitioner's convictions on direct appeal. *Id.* at *8.

Petitioner filed a petition requesting post-conviction relief on May 31, 2013, which was later amended. The post-conviction court held a hearing on November 14, 2013.[1]

At the hearing, petitioner testified that approximately one year prior to trial, he contacted trial counsel after his previous attorney had presented him with an eight-year plea offer from the State. According to petitioner, at their first meeting, trial counsel personally told him that she would win his case at trial, so he hired her. Petitioner believed his wife was also present at this meeting. He stated that during the year prior to trial, he met with trial counsel four or five times and that on two occasions, trial counsel reassured petitioner, telling him "not to worry, we're going to win this case." Petitioner testified that a week before trial, trial counsel again told him not to worry about the trial. Petitioner admitted telling his previous attorney that he wanted to clear his name but denied telling trial counsel the same.

Juanita Hogbin, petitioner's wife and the victim's mother, testified next that she was present during two or three of petitioner's meetings with trial counsel. She explained that trial counsel "told [petitioner] that she had everything under control, for him not to worry about it" but denied hearing trial counsel refer to the outcome of the trial in any other way. During cross-examination, Ms. Hogbin affirmed that petitioner had wanted to clear his name at trial.

---

[1] Petitioner has abandoned several of the issues he raised in the post-conviction court on appeal; therefore, our recitation of the facts from the post-conviction hearing will be limited to the issues raised on appeal.

Petitioner's previous attorney testified next on the State's behalf. He explained that he had advised petitioner to accept an eight-year plea offer but that petitioner rejected the offer because he did not want to go to the penitentiary and because he wanted to clear his name.

Trial counsel testified that after the court ruled against petitioner in a motion to suppress petitioner's statements to police, petitioner was "more adamant that he was going to take the stand to clear his name." She stated that petitioner insisted he had not confessed to the crimes and that "he just wouldn't see" the written confession when shown. Trial counsel explained that she told petitioner the eight-year offer was the statutory minimum for his offense and was "a fair deal." However, petitioner told trial counsel that the prosecutor "'obviously didn't think he can win his g*****n case, or he wouldn't be offering it to me.'" Trial counsel responded, "'[Y]ou're an idiot not to take this deal.'"

During cross-examination, trial counsel denied telling petitioner that she would win his case, stating:

> There is no way on God's green earth that I would ever tell a client what's going to happen at a jury trial. Because I tell them over and over that a jury takes on a life of its own, and there is no way in the world to know what a jury is going to do.

She testified that she told petitioner that she would do everything possible to ensure that the State did not prove their case against him. Yet, trial counsel categorically denied telling petitioner she would win his case at trial.

After hearing the evidence, the post-conviction court filed a written memorandum opinion on November 25, 2013, regarding, in part, petitioner's allegation that trial counsel promised to win his case at trial, stating:

> In short, Petitioner testified that he retained trial counsel and decided to go to trial rather than plead guilty based upon trial counsel's representation that she would win his case. Petitioner's wife could only partially corroborate Petitioner's version. She could only testify that trial counsel told Petitioner that she had everything under control. Trial counsel denied that she told Petitioner that she would win his case.

> This Court has reviewed that testimony of the witnesses at the post-conviction hearing and determine[d] that Petitioner's testimony in this regard is not credible. This Court finds that trial counsel never made such a statement

to Petitioner nor that Petitioner relied upon any such alleged statement to his detriment.

The post-conviction court entered its order denying post-conviction relief and incorporating by reference its memorandum opinion on December 11, 2013.

## II. Analysis

Petitioner argues that he received ineffective assistance when trial counsel told petitioner that she would win his case at trial. The State responds that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has held, "'Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.'" *Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Petitioner has failed to prove that he received ineffective assistance of counsel. Petitioner claimed that trial counsel said she would win his case at trial. However, the post-conviction court found this testimony not credible due to trial counsel's categorical denial of such statement and the fact that petitioner's wife only partially corroborated petitioner's assertion when she stated that trial counsel told petitioner that she had everything under control. Because assessing the credibility of witnesses is a matter entrusted to the post-conviction court as the trier of fact, we refuse to reassess its determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Furthermore, both petitioner's previous attorney and trial counsel testified that they advised petitioner to accept the State's plea offer in light of petitioner's admissions to police officers. However, petitioner insisted he wanted to clear his name at trial. Based on the record and the credibility determinations made by the post-conviction court, petitioner has failed to show that trial counsel's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn*, 202 S.W.3d at 116). Petitioner is without relief as to this issue.

## CONCLUSION

Based on the parties' arguments, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____

ROGER A. PAGE, JUDGE